UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VIKTORIYA ILINA, : | |
| : | |
| Petitioner, : | |
| : | |
| v. : | CIVIL NO. 3:07 CV 1490(JBA) |
| : | |
| DONNA ZICKEFOOSE, : | |
| Warden, FCI, Danbury : | |
| : | |
| Respondent. : | |

## SECOND AMENDED PETITION FOR A WRIT OF HABEAS CORPUS

### INTRODUCTION

Petitioner Viktoriya ILINA files this unopposed Second Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. §§ 2241 and 2243. Since she was a teenager, Petitioner has suffered from a condition in which her body does not produce enough estrogen and progesterone to have a regular menstrual cycle. She has been prescribed some form of medication containing estrogen and progesterone to treat this condition for more than twenty years. Respondent abruptly discontinued this treatment in April of 2007, and has not consistently or fully explained the reason for this denial. Having been denied this treatment, Petitioner has accumulated significant amounts of unopposed estrogen in her body, which puts her at risk for developing endometrial cancer. Respondent has been advised of this risk, and of Petitioner's personal cancer history, but refuses to give Petitioner the medication she requires. This denial constitutes

deliberate indifference to a serious medical need that violates the Eighth Amendment of the United States Constitution.

## JURISDICTION

1. This action arises under 28 U.S.C. § 2241(c)(1) and (3). Jurisdiction is proper because Ms. ILINA is in custody both: 1) under or by color of the authority of the United States; and 2) in violation of the Constitution or laws of the United States.

## VENUE

2. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §§ 1391(b)(2) and 2241 *et seq*. Petitioner has been in custody at FCI Danbury during all the events in question.

## PARTIES

3. Petitioner VIKTORIYA ILINA is, and was at all times relevant herein, an inmate held in the custody of the Federal Bureau of Prisons ("BOP") at FCI Danbury. She is in custody under or by color of the authority of the United States within the meaning of 28 U.S.C. § 2241(c)(1).

4. Respondent DONNA ZICKEFOOSE is the Warden at FCI Danbury and has been since 2007. She is Ms. ILINA's custodian, and, therefore, the proper habeas respondent under 28 U.S.C. § 2243.

## **FACTS**

5.  Endometrial cancer affects the inner lining of the uterus. Mutated cells uncontrollably replicate and destroy neighboring, healthy cells. If this process continues, the cancer can spread to other parts of the body and eventually end in death. Other complications of this condition include pelvic pain, painful urination, and excessive bleeding which can cause anemia. Seven thousand American women die from endometrial cancer each year.

6.  The only known cause of endometrial cancer is unopposed estrogen. A healthy uterus produces two hormones that regulate the menstrual cycle: estrogen and progesterone. Normally the levels of the two hormones are regulated by the body and remain relatively equal. In some individuals, however, no progesterone or very low levels of that hormone are produced, creating an imbalance. An excessive amount of estrogen that is not offset by progesterone can lead to a variety of complications, including endometrial cancer.

7.  Unopposed estrogen leads to additional complications in women who do not menstruate normally. Estrogen stimulates the reproduction of cells in the uterine lining. During normal menstruation, this lining is shed. For women with amenorrhea (the absence of menstruation), however, the walls of the uterus thicken excessively because there is no menstrual cycle to regulate the amount of uterine lining. This continues until the uterus walls break, leading to profuse and abnormal bleeding.

8. Ms. ILINA's body does not naturally produce normal amounts of progesterone. This condition manifested itself when she was a teenager, in the form of dysmenorrhea, severe pain during menstruation, and prolonged periods of amenorrhea. In order to treat this condition and give her a normal menstrual cycle, doctors prescribed a low dose estrogen/progesterone medication for Ms. ILINA at the age of 21. She continued to take prescribed estrogen/progesterone medication from that point until April 17, 2007, eight (8) months after she came into BOP custody.

9. In 1999, Ms. ILINA was diagnosed with, and eventually recovered from, cervical cancer. When she self-surrendered on September 18, 2006, Ms. ILINA was housed at FMC Carswell. This was done in part because of the medical facilities there and her recent history of cervical cancer. Upon her entry into FMC Carswell, Ms. ILINA's personal gynecologist provided the facility with a written recommendation that she continue to receive progesterone. Ms. ILINA received the hormone treatment during her entire time at FMC Carswell.

10. On November 13, 2006, Ms. ILINA was transferred to FCI Danbury. She continued to receive prescribed estrogen/progesterone medication until April 17, 2007. On that date Ms. ILINA went to the pharmacy to receive a renewal of her prescription, but the Physician Assistant told her he had to check with Dr. Greene, the prison gynecologist, before he could give it to her. After a two minute conversation in Dr. Greene's office, the Physician Assistant told Ms. ILINA that she would no longer receive her medication.

11. Ms ILINA informed Dr. Greene that she had been taking estrogen/progesterone medication as hormonal replacement therapy since she was 21. She told Dr. Greene that

4

without it, she could have severe medical complications, including extreme pain in the uterus, profuse bleeding, and amenorrhea. Dr. Greene expressed his awareness of the deleterious consequences of an abrupt discontinuation of the hormonal treatment, and said only that at her age having a period was unnecessary.

12. Ms. ILINA immediately wrote a request to Bonnie Ritter, Medical Director of Health Services Administration of FCI Danbury, requesting that her prescription for hormonal replacement therapy be renewed. On April 30, 2007, Ms. ILINA received a reply stating that the medication would not be given at that time. The response gave no reason for the decision.

13. Throughout the ensuing months, Ms. ILINA made requests to multiple officials asking that her prescription be renewed. She submitted several Inmate Requests to Staff to Dr. Greene, wrote two separate letters to Warden ZICKEFOOSE, and wrote to Captain Newton Kendig, Medical Director of the BOP.

14. On May 5, 2007, Ms. ILINA formally requested hormonal replacement therapy by filing a request for administrative remedy. Ms. ILINA included in her grievance that she had received hormonal replacement therapy from her personal gynecologist for ten years prior to incarceration, and that he recommended she continue this treatment while in prison. Her request also pointed out that her presentence report had contained the same recommendation.

15. After her original grievance was denied, Ms. ILINA exhausted the administrative grievance system by filing successive appeals, all of which were denied.

16. Dr. Greene examined Ms. ILINA on June 14, 2007. He did not renew her prescription, and again failed to give any explanation for his denial. He also failed to give her an explanation after a July 2007 blood test that indicated she is not in menopause. Because she is not in menopause, her body continues to produce estrogen but not progesterone.

17. On July 24, 2007, Dr. Greene examined Ms. ILINA and found a suspicious mass in her uterus. He ordered that an ultrasound be taken, but by the end of August she had still not received one. On August 28, 2007, she wrote to Warden ZICKEFOOSE asking for assistance to get the ultrasound. Ms. ILINA has still not had an ultrasound.

18. On October 17, 2007, Ms. ILINA was examined by Dr. Greene. She renewed her request for hormonal replacement therapy. Dr. Greene informed Ms. ILINA that he would consider prescribing a progesterone supplement, but only if she underwent an endometrial curettage of the uterus first. He also said the procedure would be performed at FCI Danbury and without anesthesia. Ms. ILINA immediately contacted her former gynecologist, who told her that procedure was medically unnecessary, highly invasive, and painful. Based on this information, Ms. ILINA refused the procedure. At the time, however, Ms. ILINA was under the impression that the necessary procedure was a dilettation and curettage (D&C), which is indeed highly invasive and painful. The actual requested procedure was an endometrial curettage, sometimes also called an endometrial biopsy. An endometrial curettage is much less invasive and painful than a D&C. Ms. ILINA is willing to undergo an endometrial curettage, as long as it is performed by somebody other than Dr. Greene.

19. On December 19, 2007, Ms. ILINA was examined at FCI Danbury by an outside gynecologist who consults women at the institution, Dr. Satchi, who prescribed estrogen/progesterone medication to Ms. ILINA for a period of five years. When she tried to fill this prescription the next day, however, she was informed by the pharmacist that Dr. Greene did not approve her prescription. Dr. Greene has not given any explanation for this decision.

20. On January 14, 2008, Ms. ILINA had an MRI of her back in connection with a previous injury. The MRI revealed a suspicious mass in her lower back. After the orthopedist reviewed the MRI results, he referred her to an outside gynecologist to examine the mass in more detail. Dr. Greene, however, now claims Ms. ILINA was never referred to have the mass examined by a gynecologist. No further examination of the mass has been conducted.

21. On February 27, 2008, Ms. ILINA had a routine appointment with Dr. Greene. Later that day, Ms. ILINA began to bleed profusely. The bleeding continued until March 12th. On or about March 2nd, Ms. ILINA wrote a cop-out to Dr. Greene and requested an examination. He replied that she had been fully examined on February 26, 2008 and that she should have brought the concerns about the bleedings to his attention then. It was impossible for Ms. ILINA to ask Dr. Greene about the bleeding during her morning appointment because it did not start until the evening.

## Serious Medical Need

22. As a result of the discontinuation of her estrogen/progesterone medication, Ms. ILINA has not menstruated in over 8 months. Prolonged amenorrhea constitutes a serious

medical need, and in Ms. ILINA's case, has already led to sudden, continuous, and profuse bleeding.

23. Ms. ILINA has also experienced prolonged and severe pain in her uterus and abdomen, swelling of the face, headaches, dizziness, and abnormal vaginal discharge.

24. Without estrogen/progesterone medication, Ms. ILINA's body continues to produce far more estrogen than progesterone. This imbalance puts her at risk for endometrial cancer. This danger of cancer constitutes a serious medical need.

## CLAIM FOR RELIEF

(Eighth Amendment Deliberate Indifference to Serious Medical Need)

25. Petitioner ILINA realleges and incorporates by reference each allegation of paragraphs 1-24 above.

26. Prolonged amenorrhea and high levels of unopposed estrogen constitute serious medical needs. Ms. ILINA's condition, if unchecked, may lead to endometrial cancer.

27. Respondent has failed to give Ms. ILINA any explanation for why her prescription for estrogen/progesterone medication was discontinued. In addition, she has failed to provide an ultrasound of her uterus, or further examine a suspicious mass in her back despite Ms. ILINA's history of cervical cancer. These failures by Respondent constitute deliberate indifference to Ms. ILINA's serious medical need.

For the foregoing reasons, Petitioner respectfully requests that this Court GRANT her Petition.

Respectfully submitted,

*Brett Dignam*
Brett Dignam ct00283

Counsel for Petitioner Viktoriya ILINA
The Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520-9090
(203) 432-4800
(203) 432-1426 (facsimile)
brett.dignam@yale.edu

On the petition:

Law Student Interns

Jason Chlipala '09
Sarah Mehta '09

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Memorandum was mailed this 9th day of May, 2008 to :

Assistant U.S. Attorney Lauren Nash
U.S. Attorney's Office – New Haven
157 Church St., 23rd floor
New Haven, CT 06510

Assistant U.S. Attorney Michelle Colson
U.S. Attorney's Office – New Haven
157 Church St., 23rd floor
New Haven, CT 06510

_____
Jason Chlipala
Law Student Intern